UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Richard Botelho, Jr.,                                    Case No. 2:05-cv-332

                          Plaintiff,

v.                                              **MEMORANDUM AND ORDER**

Mike Johanns, Secretary, U.S.
Department of Agriculture,
Animal Inspection Service,

                          Defendant.

_____

         This matter is before the Court on Defendant's Motion for Summary Judgment.  For

the reasons that follow, the Motion is granted.

**BACKGROUND**

         Pro se Plaintiff Richard Botelho, Jr. is employed by the United States Department of

Agriculture ("USDA") as an animal care inspector.  Botelho is a white male.  He contends

that his supervisors discriminated against him because he is white and male and because he

filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC")

and the USDA's Civil Rights Office.  He claims as adverse employment actions that he was

not promoted, that he was investigated and disciplined on two separate occasions, that the

USDA[1] initially refused to pay for his home office phone line, and that armed government

_____

         [1]  Although the named Defendant is Mike Johanns, Secretary of the USDA's Animal
Inspection Services, for all practical purposes the Defendant is the USDA, and the Court will
refer to Defendant as such.

officials came to his home to confiscate a government computer.

Botelho's employment with USDA began in 2000. His supervisor from 2001 to 2004 was Dr. Gregory Gaj, who is also a white male. Gaj's supervisor during the relevant time period was Dr. Elizabeth Goldentyr, who is a white female. In 2001, the USDA started receiving complaints about Botelho's conduct in investigating some USDA licensees. In particular, a Dr. Levy reported that Botelho had appeared at Dr. Levy's facility 18 times in two years, had entered Dr. Levy's property without announcing his presence or telephoning ahead, and had engaged in inappropriate conduct on Dr. Levy's property, including looking in the windows of Dr. Levy's home. In March 2002, Dr. Gaj forwarded Dr. Levy's complaint to Dr. Goldentyr, who forwarded the complaint to the Resource Management Systems Evaluation Staff ("RMSES") for investigation.

Dr. Gaj received another complaint about Botelho's conduct in March 2002. This licensee complained that Botelho used profanity, shouted and verbally abused the licensee, and acted in a physically threatening manner toward the licensee. Shortly thereafter, Dr. Gaj received another similar complaint. These complaints were included in the RMSES investigation. In late March, Dr. Gaj asked Botelho to provide a weekly itinerary of his inspections so that Dr. Gaj could monitor his conduct. Dr. Gaj continued to receive complaints about Botelho.

On April 23, 2002, Botelho reported to the USDA's Civil Rights Office that he was being discriminated against on the basis of race and sex because of Dr. Gaj's request that he provide itineraries. Botelho had not filed any previous charges with either the Civil Rights

2

Office or the EEOC.

On June 14, 2002, Dr. Gaj issued a "letter of instruction" to Botelho. The letter required Botelho to continue to file weekly itineraries, and ordered him not to discuss licensees or potential licensees with non-USDA employees. The letter also prohibited Botelho from investigating Dr. Levy and others who made specific complaints against Botelho. He filed another discrimination complaint on June 18, 2002.

The RMSES investigation continued, and as a result Botelho's performance review for the period ending April 30, 2002, was delayed. In July 2002, Botelho became eligible for a promotion to grade GS-9. He was not promoted at that time, but during the pendency of this lawsuit he has been promoted to GS-9. The RMSES investigation was not concluded until December 2003. The investigation determined that Botelho engaged in misconduct, and in July 2004, Botelho was notified that he would be suspended for 14 days. In response, Botelho called Dr. Goldentyr and threatened a lawsuit. Botelho also retained an attorney and submitted written responses to the misconduct alleged in the notice of suspension. On October 29, 2004, Dr. Goldentyr upheld the charges in the notice and imposed a 14-day suspension, from October 31 to November 13, 2004.

In August 2003, Botelho contacted the Civil Rights Office again, this time complaining that the USDA was discriminating against him with respect to the installation of a phone line in his home after he moved for the second time within his duty station. At the time, it is not disputed that the USDA's policy was that it would pay for a phone line in the employee's home and would pay if the employee moved once within the same duty

3

station, but would not pay for a second or subsequent move within the same duty station. However, because Botelho was not informed about this policy in writing, the USDA ultimately decided to pay for the phone line.

In January 2005, the USDA suspended Botelho for 14 days because he allegedly violated the agency's policy on outside employment. Also in January 2005, armed government agents came to Botelho's home and confiscated Botelho's government-issued computer.

Botelho ultimately filed four separate EEOC complaints, in April, June and July 2002. In May 2005, Botelho voluntarily withdrew his EEOC complaints so that he could proceed to court on his claims. He filed this lawsuit shortly thereafter.

**DISCUSSION**

**A.    Standard of Review**

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). Nevertheless, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1.).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**B.      Exhaustion of Remedies**

There is no dispute that, prior to instituting a lawsuit in federal district court, a putative Title VII plaintiff must first file a charge with either the EEOC or the relevant state employment agency.  42 U.S.C. § 2000e-5(e)(1).  At least with respect to the allegations in paragraphs 4(h)-(j) of the Amended Complaint, Botelho did not exhaust his administrative remedies.  These subparagraphs complain about conduct that occurred in January 2005.  Specifically, Botelho contends that he was discriminated and retaliated against by the USDA suspending him for alleged violations of its outside employment policy and by the agents confiscating his computer.  None of these allegations were included in his three EEOC charges, and therefore the Court will not consider them.

**C.      Title VII**

1.      Discrimination

To establish a prima facie case of discrimination under Title VII of the Civil Rights

5

Act of 1964, 42 U.S.C. § 2000e et seq., Botelho must prove that: "(1) []he is a member of a

protected class; (2) []he was subjected to adverse employment action; (3) [his] employer

treated similarly situated [non-white or female] employees more favorably; and (4) []he was

qualified to do the job." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (citations

omitted).

If Botelho establishes a prima facie case of discrimination, the burden shifts to the

USDA to state a legitimate, nondiscriminatory reason for the actions it took. See McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). If the USDA succeeds, the burden

shifts back to Botelho to show that the reason was a pretext for discrimination. Id. at 804.

Botelho can show pretext, for example, by presenting evidence of a female employee with

a similar employment history who was not subjected to the same adverse employment

practice. Gamboa v. Am. Airlines, 170 Fed. App'x 610, 612 (11th Cir. 2006).

Assuming that Botelho can show that he is a member of a protected group, Defendant

argues that Botelho's claims fail because he cannot show that he was subject to an adverse

employment action or that similarly situated employees not a member of the protected group

were treated differently.

An adverse employment action is one which effects the "'terms, conditions, or

privileges'" of [Botelho's] job in a real and demonstrable way. . . . [Botelho] must show a

serious and material change in the terms, conditions, or privileges of employment." Davis

v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). In

addition, it is irrelevant that Botelho thought that the employment action was adverse.

6

Rather, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Id. Botelho alleges the following adverse employment actions: denial of promotion, the requirement that he file itineraries, the investigation and subsequent 14-day suspension, and the initial refusal to pay for his phone line.

As an initial matter, it is clear that the requirement that he file itineraries, the investigation of his alleged misconduct, and the initial refusal to pay for his phone line are not adverse employment actions. None of these supposedly adverse actions affected the terms and conditions of Botelho's job, and none was a serious or material change in those terms and conditions.

The remainder of Botelho's discrimination claims fail because he has utterly failed to come forward with any evidence that similarly situated female or non-white employees were treated differently than he was. He alleges that the treatment of Dr. Tom Jones in 1993 establishes his prima facie case, but Dr. Jones is a white male. Thus, the alleged mistreatment of Dr. Jones does not establish Botelho's prima facie case. Botelho has offered no evidence[2] that female or non-white employees received the number or type of complaints about their performance and were not investigated or disciplined for their behavior.[3] See

---

[2]  The Amended Complaint asserts that black female employees were not subject to any discipline for similar conduct, but these bald allegations, without any supporting depositions or affidavits, simply cannot create a genuine issue of material fact.

[3]  Botelho contends that a female employee named Dr. Taylor was the subject of numerous complaints but was not disciplined as Botelho was. However, there is no evidence that the USDA received the same sort of complaints about her performance as it did about Botelho's performance. The evidence Botelho proffers purports to show that some USDA

Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) ("In determining whether employees are similarly situated for the purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar misconduct and are disciplined in different ways.") (quotation omitted).   The only evidence in the record is that Dr. Gaj did investigate complaints about other employees and did discipline other employees, although none as severely as Botelho.   However, the undisputed evidence is that no other employee was the subject of the number or kind of complaints as Botelho was.   See id. ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."); Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) ("The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed.") (quotation and alteration omitted).   Because there are no similarly situated female or non-white employees who were treated differently than Botelho, he cannot show that the USDA's treatment of him amounted to discrimination on the basis of race or sex.

      2.    Retaliation

      To succeed on his retaliation claims, Botelho must first establish a prima facie case

---

licensees had problems with Taylor, but notably does not show that these licensees brought their specific complaints to the USDA.  In addition, the allegations against Dr. Taylor are not the same, either in kind or in severity, as the allegations against Botelho.  Dr. Taylor is thus not similarly situated and cannot establish Botelho's prima facie case.

of retaliation: (1) that he engaged in activity protected by Title VII, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action.  Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).  Botelho has failed to establish a prima facie case of retaliation as to most of the adverse employment actions he alleges.

At least some of the alleged adverse employment actions—the first investigation and the requirement that he file weekly itineraries—occurred before Botelho made any charge of discrimination, and thus there can be no causal connection between these actions and his claim of discrimination.  Similarly, Botelho has failed to show any causal connection between his suspension in November 2004 and his discrimination complaints in April, June, and July 2002.  See Webb-Edwards v. Orange County Sheriff's Office, 525 F.3d 1013, 1029 (11th Cir. 2008) (six-month gap insufficient to establish causal connection).

The only adverse employment action that is sufficiently connected to Botelho's discrimination complaints is the USDA's failure to promote Botelho to grade GS-9 when he became eligible for that promotion in July 2002.  Thus, it is the USDA's burden to offer a legitimate, non-discriminatory reason for failing to promote Botelho.  If the USDA offers such a reason, Botelho must demonstrate that the reasons given are a pretext for retaliation.  Crawford, 529 F.3d at 976.

The USDA has offered compelling reasons for its failure to promote Botelho in July 2002: the numerous complaints it had received about his performance and the fact that he was under investigation for those complaints.  In response, Botelho contends that he was the

9

only animal care inspector who was not a GS-9, he has offered no evidence on this point. Nor does his argument demonstrate that the USDA's proffered reasons are pretextual. Botelho must show that "no reasonable person, in the exercise of impartial judgment" would have failed to promote him, given his qualifications and job performance.  <u>Springer v. Convergys Customer Mgmt. Group, Inc.</u>, 509 F.3d 1344, 1349 (11th Cir. 2007).  He has failed to do this and his claim of retaliation arising out of the failure to promote must be dismissed.

**CONCLUSION**

Botelho has failed to meet his burden to come forward with a genuine issue of material fact on his claims.  Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 66) is **GRANTED** and this matter is **DISMISSED with prejudice**.

**The Clerk shall enter judgment accordingly, terminate all remaining deadlines as moot, and close the file.**

Dated: <u>Tuesday, January 27, 2009</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge

10